(88 N. W. Rep. 567.)

---

JAMES THOMPSON *vs.* GEORGE THOMPSON.

Opinion filed Dec. 20, 1901.

### Claim and Delivery—Arrest and Bail.

In an action in claim and delivery brought for the purpose of securing possession of mortgaged personal property, in which it is claimed that defendant has concealed such property with intent to deprive the plaintiff of the benefit of his security, *held,* that an order of arrest and bail may be issued under subdivision 3 of § 5304, Rev. Codes.

**Vacation of Order for Arrest.**

> On an application to vacate an order of arrest in such a case, the evidence is considered as recited in the opinion, and *held* to warrant a vacation of the order of arrest and defendant's discharge from custody.

**Fraudulent Concealment of Mortgaged Chattels.**

> A concealment, within the meaning of such section, signifies to hide or to secrete with intent to deprive the mortgagee of his security.

Appeal from District Court, Stutsman County; *Glaspell,* J.

Action by James Thompson against George Thompson. From an order vacating an order of arrest, plaintiff appeals. Affirmed.

*S. E. Ellsworth,* for appellant.

*Jerome Parks,* for respondent.

Morgan, J. This is an appeal from an order made by the district court of Stutsman county vacating an order of arrest in a civil action theretofore made by that court. Such order of arrest was made in an action in claim and delivery after an attempt had been made to procure the possession of the personal property described in the claim and delivery papers, and such attempt had failed. The claim and delivery action was brought to recover possession of two bay mares, 8 years old, weight 1,200 pounds, on which plaintiff held a chattel mortgage to secure payment of two notes, one then due, and the other not due until November, 1901. The order of arrest was issued upon an affidavit, and upon the complaint, and all other papers in the claim and delivery action, which were expressly made a part of the affidavit. This affidavit, after stating facts making out a cause of action for the possession of the property described, contained the following allegations pertaining to the grounds for praying for the order of arrest, to-wit: "Said undertaking, affidavit, and notice in claim and delivery were, on the 16th day of January, 1901, placed in the hands of the sheriff of Stutsman county, who, under and by virtue thereof, on the 17th day of January, 1901, attempted to seize the property described for the purpose of holding and delivering the same as required by law. Thereupon the said defendant, George Thompson, concealed and removed, and disposed of so that it could not be found, and cannot be found and taken by said sheriff, and with the intent that it should not be found and taken, and with the intent to deprive the plaintiff of the benefit thereof, part of the propery described in such affidavit." After reciting that the sheriff made diligent search and inquiry around defendant's premises and in the neighborhood of his residence for the mares described in the affidavit, the affidavit alleges: "The said defendant, George Thompson, in answer to plaintiff's demand for possession of said mares, declared that they had been taken to the woods (meaning thereby the forest region of the state of Minnesota), and that, if plaintiff found them,

he would have to travel a long way." Upon this affidavit and the papers made a part thereof, an order of arrest was issued, and the defendant arrested thereunder, the plaintiff having given a bond in the sum of $1000 as provided by § 5307, Rev. Codes, and the sheriff ordered to release said defendant from such arrest upon his furnishing a bail bond in the sum of $400. The defendant did not furnish such bond, and was kept in custody until released by the order appealed from on March 9, 1901. On said March 9th, the defendant was brought before the court on a motion for his discharge from such arrest, specifying in his notice that such motion "will be made on all papers filed in said action and on the affidavits of George Thompson, William Armstrong, Andrew Thompson, and P. W. Eddy." On such hearing the affidavits of said persons were read, their substance being as follows: A positive denial of having concealed or disposed of the mares on which plaintiff holds a mortgage; a denial by defendant and Andrew Thompson that defendant used the language contained in plaintiff's affidavit, that the mares were in the woods, and that he would have to travel a long way to get them. Three witnesses testified that the mares were, at the time of the plaintiff's and the sheriff's visits to defendant's premises, at or around such premises, and had been there during all the time since the mortgage was executed. That such mares were not correctly described in such mortgage, and that in consequence of such incorrect description the sheriff did not recognize or find them. The defendant did nothing whatever to hinder the sheriff from taking them at that time. That at that time defendant offered to pay the note then due, with costs, but plaintiff refused such offer unless defendant would secure the note not due by further security. That, after the sheriff had failed to find and levy on such mares, defendant was arrested at the instance of the plaintiff for removing mortgaged property, and waived examination on such charge, and was placed under bonds to appear for trial at the district court. That after such arrest plaintiff brought another action against defendant on a money demand on the note due, being the same note described in the mortgage, and recovered judgment thereon. That defendant thereupon paid such judgment in full, with costs. That there exists great animosity on the part of the plaintiff against defendant for the reason that defendant placed an attachment upon a stallion belonging to the plaintiff, and refuses to release such attachment, and that his refusal to release such attachment is the cause of plaintiff's bringing such proceedings against the defendant. The plaintiff offered in evidence and read affidavits to rebut the showing made by the defendant by the affidavits, the contents of which have just been recited. The affidavits on plaintiff's behalf showed with great particularity the diligence used by himself and the sheriff to find the property described in his mortgage. To show a concealment of such property, his affidavit contained the following facts which are given as recited in the affidavit, viz.: "I

followed him [defendant] into the stable, and told him I wished to see the two mares described in his mortgage. He answered: 'If you see them you will go a long ways.' I then inquired, 'Where are they?' He said: 'gone to the woods.' I asked who took them there, and he replied, 'Claflin.' I inquired, 'What right had you to send them out of the state?' Then Andrew Thompson, his father, who had been standing near and within hearing during the foregoing conversation, answered: 'We have a right to do it. We had a written agreement from Tom Creath.'" Creath was the person to whom the mortgage was originally given, and from whom the plaintiff purchased it. What transpired at this interview, together with the fact that the defendant said that he did not know where the mares were at that time, and that the sheriff failed to find them after a thorough and sufficient effort to do so, is relied on by the plaintiff as a sufficient showing that the defendant concealed the property within the meaning of subdivision 3 of section 5304, Rev. Codes, providing in what cases a defendant may be arrested in civil action, which reads as follows: "In an action to recover the possession of personal property unjustly detained, when the property or any portion thereof has been concealed, removed or disposed of, so that it cannot be found or taken by the sheriff and with the intent that it should not be found or taken or with the intent to deprive the plaintiff of the benefit thereof." Before considering whether such a showing in view of defendant's evidence, would be sufficient to warrant a denial of the motion to vacate the order of arrest, we will consider other questions arising in the case in reference to the provisional remedy of arrest and bail. That such remedy may be resorted to in a claim and delivery action upon a proper showing under the section quoted is not denied. The remedy may be resorted to when there was fraud at the inception of the contract in reference to personal property, or in cases where there was no fraud when the contract was entered into, but there is fraudulent concealment of the property when the contract is attempted to be enforced. *In re Short,* 54 N. Y. Supp. 1075; *Tracy* v. *Griffin,* 50 Barb. 70; *Barnett* v. *Selling,* 70 N. Y. 492. In this case the cause of action set forth in the complaint and the cause of arrest set forth in the affidavit are not identical. The cause of action alleged in the complaint is simply one in claim and delivery, and judgment may be rendered therein without a determination of any of the facts alleged as grounds for the order of arrest. It was therefore proper for the trial court to enter upon an investigation of the question raised by the motion of the defendant as to the legality as a matter of fact upon the merits of the arrest and imprisonment of the defendant, and to decide such questions upon affidavits. Section 5330, Rev. Codes; *Johnson* v. *Florence,* 32 How. Prac. 230. After considering the affidavits presented on the motion to vacate the order of arrest, we are in entire accord with the conclusion reached by the trial court. The defendant clearly showed that he had been

guilty of no act of concealment. Conceding that everything contained in the plaintiff's showing to be true, still we find nothing to sustain the conclusion that the defendant did anything with intent to deprive the plaintiff of his security as defined in § 5304, supra. This statute is penal in its nature, and those invoking its aid must bring themselves strictly within its terms. Admitting that he sent the mares to the woods under the written consent of the mortgagee (Creath), that would not be ground for defendant's arrest. That would not necessarily be a concealment of the property with intent to deprive the plaintiff of the benefit of his security. That might be sufficient ground for the mortgagee to deem himself insecure, and justify him in commencing foreclosure proceedings by attempting to take possession of the property before the debt was all due, as he did in this case, but would not be sufficient as a ground for the imprisonment of the defendant under a statute requiring a showing of an intent to deprive plaintiff of his security before that can be justified. Even had the defendant sent the mares to the woods for a temporary purpose without the consent of the mortgagee, without any intention to defraud the mortgagee of his security, that would not alone justify the holding of the defendant in custody, nor be grounds for compelling him to give bail to keep himself from such imprisonment. Before that would be a concealment within the statute, the defendant must have done so with intent to deprive the plaintiff of his security. As against such a showing as made by the plaintiff in this case, if any evidence at all be required to overcome it, a denial of any concealment of the property by an affirmative showing by defendant and his witnesses, coupled with a showing of the absence of any intent to deprive the plaintiff of the benefit of his security, with the further affirmative showing of an offer to satisfy the debt due, overcomes such showing affirmatively. The question for decision upon a motion to vacate an order of arrest upon the merits in cases where the cause of action and the cause of arrest are not identical is, shall the order of arrest be continued in force after a consideration of all the affidavits presented on both sides? *Chapin* v. *Seeley,* 13 How. Prac. 490.

This much has been said upon the theory that "two bay mares, 8 years old, weight 1,200," were actually mortgaged by the defendant to Creath. This is plaintiff's theory of the evidence. But upon the theory that the mares that were intended to be mortgaged were incorrectly described,—which is the defendant's contention,—and that the ones intended to be mortgaged were older, and of less value, still the same conclusion would be reached. It does not appear, nor is it claimed, that the defendant was responsible for such misdescription, nor that it was done fraudulently. These old mares are clearly shown to have been on or around the premises at the time the sheriff was searching for the property described in the mortgage. If these were the ones mort-

gaged, there was no concealment of them. A concealment implies a hiding or secreting with intent to prevent the seizure of the property. Construing what was there said by the defendant with strictness against him, it cannot be held that there was a concealment of the mortgaged property without regard to which span of mares was intended to be mortgaged.

Upon a consideration of the whole evidence, we hold that the weight of it was in favor of vacating the order of arrest. We discover nothing in the record disclosing any intention on the defendant's part to deprive the plaintiff of his claim or of his security. True, there is a bitter animosity existing between these parties growing out of their business dealings, and each has done nothing towards accommodating the other. Both have stood under their strict legal rights as understood by them. If doubts existed in our minds as to where the weight of the evidence lies, we would probably not disturb the decision of the trial court. In cases of continuing or vacating orders of arrest the trial court is held to have discretionary powers, which will not be disturbed on appeal except in cases of manifest abuse thereof. *Clarks* v. *Lourie*, 82 N. Y. 580; *Liddell*. v. *Paton*, 67 N. Y. 393; *Wright* v. *Brown*, Id. 1; *Towle* v. *Richardson*, 63 Vt. 96, 20 Atl. Rep. 925.

The order is affirmed. All concur.